JUDGES: Hon. Gene Donofrio, Hon. Mary DeGenaro, Hon. Carol Ann Robb
OPINION
DONOFRIO, J.
*721 {¶ 1} Defendants-appellants, Bruce Broyles and Rhonda Broyles, appeal the judgment of the Mahoning County Court of Common Pleas finding in favor of plaintiff-appellee, the Bank of New York Mellon fka Bank of New York Trustee for the certificate holders CWABS, Inc., Asset-Backed Certificates, Series 2005-2012, on its claim in foreclosure, its action on a promissory note and the amount awarded to plaintiff-appellee. In addition, appellants appeal the trial court's denial of their motion to compel discovery.
{¶ 2} In 2005, appellants purchased real property located at 164 Griswold Drive in Youngstown, Ohio. Appellants secured a loan from Countrywide Home Loans, Inc. (Countrywide) in order to purchase the property. Countrywide secured its loan to appellants with a promissory note in the amount of $142,500.00. The note was indorsed by Countrywide in blank. The promissory note was secured by a mortgage given by appellants to Mortgage Electronic Registration Systems, Inc. (MERS) who was acting on behalf of Countrywide. The promissory note required monthly payments beginning on October 1, 2005 and ending on September 1, 2035. The promissory note and mortgage were executed simultaneously and properly recorded with the Mahoning County Recorder's Office.
{¶ 3} Appellants' promissory note and mortgage changed hands several times. The promissory note and mortgage were at times either held or serviced by: Bank of America (BOA), Green Tree, appellee, and Ditech Financial, LLC (Ditech). Appellee is the current possessor of appellants' promissory note and mortgage with Ditech servicing the loan.
{¶ 4} Eventually, appellee filed a complaint in foreclosure and an action on the promissory note against appellants on the basis that appellants defaulted by failing to make several payments. During the discovery phase, appellants served appellee with discovery requests attempting to ascertain information regarding: the terms of a trust that appellee was a part of, any and all parties to said trust, and exactly how and when appellee came into possession of appellants' promissory note and mortgage. Appellee objected to these discovery requests on the basis that they were not calculated to lead to admissible evidence. Appellants filed a motion to compel appellee to respond to these discovery requests. The trial court denied appellants' motion to compel on the basis that it was not likely to lead to discoverable information.
{¶ 5} The case eventually proceeded to a bench trial. At trial, appellee called Todd Visser. Visser was a foreclosure mediation specialist employed by Ditech, appellee's servicer of appellants' loan. Visser testified on direct examination that he is familiar with documents relating to promissory notes and mortgages and that such documents are kept in the normal course of business for Ditech. Visser continued by testifying that Ditech was in possession of appellants' promissory note and that appellants' mortgage was assigned to appellee. Visser also testified that two payments per loan modifications were made by appellants. Finally, Visser testified that *722 Green Tree, Ditech's predecessor on appellant's note, had sent out notices of default to appellants.
{¶ 6} On cross-examination, Visser testified that Ditech had obtained the promissory note from BOA. Visser was questioned about a class-action lawsuit against BOA in 2012 on the basis that BOA was engaging in misconduct. The class-action lawsuit against BOA resulted in a consent decree in which BOA paid out a substantial settlement but admitted no wrongdoing. However, Visser was not aware of the class-action lawsuit against BOA. Visser also testified that he had no knowledge about how appellee or Ditech came into possession of the promissory note or mortgage or the date they were transferred.
{¶ 7} Appellant Bruce Broyles was the only witness called on behalf of appellants. Broyles testified that Countrywide and BOA entered into consent decrees with the U.S. Department of Justice for improperly denying loan modifications. Broyles testified that the reason he engaged in the loan modifications presented by appellee was because he was wrongfully denied Home Affordable Modification Program (HAMP) loan modifications. Broyles also admitted documents pertaining to the trust that appellee was a part of and potentially received appellants' promissory note and mortgage through.
{¶ 8} At the conclusion of the trial, the trial court found in favor of appellee. On June 7, 2016, the trial court issued its final judgment entry concerning the disposition of this case. The trial court ordered appellants to pay appellee $183,361.93 for the principal amount remaining on the note and $25,767.38 in interest. Appellants were to pay this amount within three days of the judgment entry or appellee had the right to foreclose on appellants' property. Appellants timely filed this appeal on July 1, 2016. Appellants now raise four assignments of error.
{¶ 9} Appellants' first assignment of error states:
THE TRIAL COURT ERRED IN ALLOWING MR. VISSER TO TESTIFY FROM "BUSINESS RECORDS" AS THE SOURCE OF THE BUSINESS RECORDS WAS DEMONSTRATED TO BE UNTRUSTWORTHY.
{¶ 10} Appellants argue that Visser should not have been allowed to testify regarding any business records that Ditech obtained from Green Tree or BOA. Appellants contend that the records were hearsay and untrustworthy due to the existence of class action lawsuits and consent decrees because of alleged illicit behavior on the part of Green Tree or BOA, which indicates a lack of trustworthiness.
{¶ 11} In general, the admission of evidence is within the discretion of the trial court and the court's decision will only be reversed upon a showing of abuse of discretion. State ex rel. Sartini v. Yost , 96 Ohio St. 3d 37, 2002-Ohio-3317, 770 N.E.2d 584. Abuse of discretion implies that the court acted in an unreasonable, arbitrary, or unconscionable manner. Id. citing State v. Herring , 94 Ohio St. 3d 246, 762 N.E.2d 940 (2002).
{¶ 12} Both parties agree that the exhibits admitted at trial and Visser's testimony concerning appellee's exhibits, if admissible, would be an exception to hearsay pursuant to Evid.R. 803(6). This rule is commonly referred to as the business records exception to hearsay.
A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business *723 activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.
Evid.R. 803(6).
{¶ 13} There were six exhibits that Visser testified about on direct examination at trial. The exhibits Visser testified about were: the promissory note between Countrywide and appellants, the mortgage on appellants' property, the assignment of the mortgage naming appellee as assignee, the loan modification between BOA and appellants, the notices of default Green Tree sent to appellants, and appellants' payment history on their loan. Visser testified that he was a mortgage servicer employed by Ditech and assigned to appellants' loan. (Tr. 16). Visser also testified that he is familiar with all of the documents contained in appellants' loan and mortgage. (Tr. 17-18). Visser also testified that the information contained in appellants' loan and mortgage documents went through a verification process once Green Tree/Ditech received it and any errors detected in the documents are sent back to be rectified. (Tr. 45-46). Visser also indicated that this process happens any time Ditech "receive[s] a loan from a prior servicer * * *." (Tr. 45). Ultimately, these documents, accompanied by Visser's testimony, are sufficient to satisfy Ev.R. 803(6).
{¶ 14} But appellants specifically argue that because Visser did not make an attempt to verify the documents from BOA or Green Tree after they settled the class action lawsuit in which there were allegations of overcharging for insurance, the documents have an indication of lack of trustworthiness. As Evid.R 803(6) suggests, the issue of trustworthiness concerning a potential business record arises when the document is made. E. Sav. Bank v. Bucci , 7th Dist. No. 08 MA 28, 2008-Ohio-6363, 2008 WL 5124559, ¶ 106. Analyzing the documents at the time they were made, appellants' argument does not have merit.
{¶ 15} The only evidence that appellants presented at trial that may indicate a lack of trustworthiness of appellee's exhibits is exhibit B which was a consent judgment between the US Department of Justice and multiple financial institutions. These institutions included BOA and Countrywide, for alleged violations of several laws. These laws involve: respective states' unfair and deceptive acts and practices laws, the False Claims Act, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, the Servicemembers Civil Relief Act, and various bankruptcy provisions. But appellants concede that the allegations contained in the consent decree are not admitted to be true.
{¶ 16} Additionally, exhibit A is a notice of a class action appellants received and exhibit C is correspondence between appellant Bruce Broyles and Green Tree concerning loan modifications. There is nothing in appellants' exhibits which specifically indicate that appellee's exhibits lack trustworthiness.
{¶ 17} Accordingly, appellants' first assignment of error lacks merit and is overruled.
{¶ 18} Appellants' second assignment of error states:
THE TRIAL COURT ERRED IN GRANTING JUDGMENT IN EXCESS OF THE FACE VALUE OF THE PROMISSORY NOTE, AS PLAINTIFF DEMONSTRATED ONLY THAT IT WAS IN POSSESSION OF
*724 THE PROMISSORY NOTE, AND PLAINTIFF DID NOT DEMONSTRATE THAT IT WAS ENTITLED TO ALL THE RIGHTS OF A HOLDER.
{¶ 19} Appellants argue that no evidence was presented that showed that appellee was in fact the holder of their promissory note. With no evidence showing that appellee is the holder of the promissory note, appellants argue that the trial court erred when it ruled in favor of appellee and allowed it to collect on the note.
{¶ 20} When reviewing civil appeals from bench trials, an appellate court applies a manifest weight standard of review. Revilo Tyluka, L.L.C. v. Simon Roofing & Sheet Metal Corp. , 193 Ohio App.3d 535, 2011-Ohio-1922, 952 N.E.2d 1181, ¶ 5 (8th Dist.), citing App.R. 12(C), Seasons Coal v. Cleveland , 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Judgments supported by some competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. , 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus (1978). See also, Gerijo, Inc. v. Fairfield , 70 Ohio St.3d 223, 226, 638 N.E.2d 533 (1994). Reviewing courts must oblige every reasonable presumption in favor of the lower court's judgment and findings of fact. Gerijo , 70 Ohio St.3d at 226, 638 N.E.2d 533 (citing Seasons Coal Co. , supra). In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. Id.
{¶ 21} Appellants point to R.C. 1303.31, which lists the types of persons entitled to enforce a negotiable instrument. Those persons are: the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, and a person not in possession of the instrument who is entitled to enforce the instrument pursuant to R.C. 1303.38 or R.C. 1303.58(D). R.C. 1303.31(A)(1)-(3). Appellee argues that, at the very least, it should be considered a nonholder in possession of the instrument who has the rights of a holder.
{¶ 22} Both appellants and appellee agree that the original promissory note was indorsed by Countrywide in blank. Pursuant to R.C. 1303.25(B), this creates a blank indorsement that becomes payable to the bearer. In this case, appellee is the bearer because appellee has possession of the appellants' promissory note indorsed in blank. At trial, appellee produced the original note with its blank indorsement. (Tr. 19). The note was admitted as an exhibit without objection. (Tr. 68). The holder of a note with a blank indorsement has standing to enforce the note. Bank of Am. N.A. v. Miller , 7th Dist. No. 13 CA 894, 2014-Ohio-2932, 2014 WL 2999186, ¶ 20 citing Deutsche Bank Natl. Trust Co. v. Santisi , 11th Dist. No. 2013-T-0048, 2013-Ohio-5848, 2013 WL 6885340.
{¶ 23} Accordingly, appellants' second assignment of error lacks merit and is overruled.
{¶ 24} Appellants' third assignment of error states:
THE TRIAL COURT ERRED IN GRANTING JUDGMENT IN AN AMOUNT WHICH INCLUDED TWO INTERNAL LOAN MODIFICATIONS WHICH WERE ENTERED INTO BASED UPON THE FRAUDULENT MISREPRESENTATIONS THAT APPELLANTS WERE NOT ELIGIBLE FOR HAMP LOAN MODIFICATIONS.
{¶ 25} Appellants argue that the judgment the trial court entered was in error because it was based on two internal loan modifications that may have been obtained *725 based on fraud. Appellants allege that BOA was the defendant in a class action lawsuit for improperly denying HAMP to clients. Furthermore, appellants argue that appellant Bruce Broyles received a notification from Green Tree stating that appellants were eligible for a Department of Justice loan modification which was offered to individuals who were improperly denied HAMP loan modifications.
{¶ 26} As this assignment of error asserts a similar issue to appellants' second assignment of error, it is subject to the same standard of review.
{¶ 27} Appellants are asserting fraud as a defense to a judgment in excess of the original amount of the promissory note. The elements of fraud are:
(a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
(d) with the intent of misleading another into relying upon it,
(e) justifiable reliance upon the representation or concealment, and
(f) a resulting injury proximately caused by the reliance.
Burr v. Board of County Com'rs of Stark County , 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986).
{¶ 28} Appellants assert that they were fraudulently denied HAMP modifications and were then forced to enter into "internal loan modifications." Appellant asserts that the elements of fraud are met with two documents: a consent decree which alleged BOA was improperly denying HAMP loans and a letter from Green Tree stating that appellants were eligible for a Department of Justice loan modification. Appellants assert that the Department of Justice loan modifications were only offered to people who were improperly denied loan modifications. Appellants further argue that if they were approved for a HAMP loan immediately, they would not have defaulted on their loan and this action would never have happened.
{¶ 29} Appellants did assert in their answer to the complaint the affirmative defense of fraud, specifically that their loan modifications were fraudulently obtained. However, in PNC Mtge. v. Garland , 7th Dist. No. 12 MA 222, 2014-Ohio-1173, 2014 WL 1325908, this Court held that borrowers have no standing to enforce HAMP or allege HAMP violations as an affirmative defense unless there is evidence that the borrower was intended to benefit from the relevant servicing contract containing the obligation to follow HAMP or where the HAMP requirements are specifically incorporated into the borrower's contract with the lender. Id. at ¶ 3, 48.
{¶ 30} In this case, exhibit 1, which is appellants' adjustable rate note, contains no provisions concerning HAMP. Additionally, exhibits 2, 4, and 5 (appellants' mortgage, loan modification agreement, and notices of default respectively) contain no provisions that even mention HAMP. Ultimately, applying this Court's decision in Garland , appellants lacked standing to assert HAMP as an affirmative defense.
{¶ 31} Accordingly, appellants' third assignment of error lacks merit and is overruled.
{¶ 32} Appellants' fourth assignment of error states:
THE TRIAL COURT ERRED IN DENYING APPELLANTS' DISCOVERY REGARDING THE TRUST, ITS POSSESSION OF THE PROMISSORY
*726 NOTE AND MORTGAGE, AND ITS REMIC ELECTIONS.
{¶ 33} Appellants raise two issues with this assignment of error. First, appellants argue that appellee acquired the note and mortgage in violation of a trust agreement to which appellee is a trustee. Appellants argue that because the trust agreement was violated, the transaction which resulted in appellee receiving appellants' promissory note and mortgage is void. Second, appellants argue that they had the right to raise the violation of a pooling and servicing agreement as a defense against foreclosure. Appellants attempted to find information relating to these issues during discovery. But appellee did not comply with the respective discovery requests and the trial court denied appellants' motion to compel responses to these discovery requests.
{¶ 34} A trial court's decision concerning a motion to compel is subject to an abuse of discretion review. State ex rel. The V. Cos. v. Marshall , 81 Ohio St.3d 467, 692 N.E.2d 198 (1998).
{¶ 35} Appellants' motion to compel discovery dated July 6, 2015 was seeking responses to 23 interrogatories and seven requests for production. The interrogatories were seeking information concerning: a trust to which appellee was a trustee, the terms of said trust, how the trust received appellants' promissory note, terms of a prospectus supplement concerning the trust, who specifically denied appellants for a HAMP loan modification, and the parties involved with appellants' offered DOJ loan modification. The requests for production of documents appellants propounded to appellee were seeking: the pooling and servicing agreement governing the trust to which appellee was a party, the prospectus governing the trust to which appellee was a party, the prospectus supplements, documents determining appellants were ineligible for HAMP loan modifications, and any documents related to the DOJ loan modification concerning appellants. All of these requests were objected to on the grounds that they were not likely to lead to admissible evidence.
{¶ 36} On March 9, 2016, the trial court issued an order which specified that any and all disputes concerning prior loan modifications and DOJ modifications were resolved. The trial court denied appellants' motion to compel any discovery requests concerning: appellee's governing trust documents, the prospectus, the pooling and servicing agreement, IRS Form 938, and requests concerning appellee's compliance with these documents on the grounds that appellants lacked standing to assert failure of compliance with these documents as a defense pursuant to Bank of New York Mellon v. Unger , 8th Dist. No. 97315, 2012-Ohio-1950, 2012 WL 1567192.
{¶ 37} In Unger , the Eighth District held mortgage assignments do not alter the obligations of a debtor/mortgagor under a promissory note or a mortgage. Id. at ¶ 35. Furthermore, the Eighth District found that under the facts in Unger , the fact that the debtors/mortgagors defaulted under the terms of the promissory note is not impacted by any subsequent assignments of the promissory note or the mortgage. Id.
{¶ 38} The facts in Unger are similar to this case. In this case, appellee brought an action against appellants for foreclosure due to appellants' default on the promissory note. As in Unger , appellants' discovery requests were attempting to seek information related to a trust to which appellee was a party to determine if appellee's possession of appellants' note was a violation of said trust's provisions. The fact that there is a trust to which appellee is a party or that appellee may have violated terms *727 of said trust does not alter the fact that appellee was in possession of appellants' note and mortgage. Moreover, it does not change the fact that appellants' note was a bearer instrument as explained above.
{¶ 39} Furthermore, in addition to the Unger decision, this Court has recognized that multiple Ohio districts have concluded that a debtor lacks standing to challenge whether the transfer of a mortgage loan to a trust complied with the relevant pooling and service agreements. U.S. Bank Natl. Assn. v. Crow , 7th Dist. No. 15 MA 0113, 2016-Ohio-5391, 2016 WL 4382693 citing Unger , 2012-Ohio-1950, 2012 WL 1567192 ¶ 35, Bank of New York Mellon v. Clancy , 2d Dist. No. 25823, 2014-Ohio-1975, 2014 WL 1887719 ¶ 22, 33, HSBC Bank USA, Natl. Assocs. as Trustee v. Sherman , 1st Dist. No. C-120302, 2013-Ohio-4220, 2013 WL 5436540 ¶ 21, Waterfall Victoria Master Fund Ltd. v. Yeager , 11th Dist. No. 2012-L-071, 2013-Ohio-3206, 2013 WL 3833467 ¶ 21. Appellants lack standing to challenge any trust, pooling, or servicing agreement to which appellee was a party. Moreover, the existence or breach of any such agreement does not alter appellants' obligations under the promissory note or mortgage. Therefore, the trial court's decision to deny appellants' motion to compel discovery was not an abuse of discretion.
{¶ 40} Accordingly, appellants' fourth assignment of error lacks merit and is overruled.
{¶ 41} For the reasons stated above, the trial court's judgment is hereby affirmed.
DeGenaro, J., concurs
Robb, P.J., concurs